UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| DENISA DENINA M., | |
|---|---|
| Plaintiff, | Case No. 2:19-cv-05042-RAJ-BAT |
| v. | **REPORT AND RECOMMENDATION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") finding her not disabled and contends the ALJ erred in evaluating medical opinion evidence. Dkt. 1. The undersigned concludes that the ALJ committed reversible error in his evaluations and that remand for further proceedings is necessary to resolve the error. Therefore, the Court recommends **REVERSING** the Commissioner's final decision and **REMANDING** the case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

On September 4, 2015, Plaintiff protectively filed applications for Disability Insurance and Supplemental Security Income benefits. Tr. 280. Plaintiff claimed disability with an alleged onset date of June 5, 2015. Tr. 283, 285. The claims were denied initially on January 29, 2016, and upon reconsideration on May 4, 2016. Tr. 182, 192, 198. On November 6, 2017, a hearing was held before Administrative Law Judge Vadim Mozyrsky. Tr. 39.

Utilizing the five step sequential evaluation process,[1] the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. At steps two and three, the ALJ found that Plaintiff suffered from severe impairments including asthma, allergies, borderline intellectual functioning, anxiety, depression, schizoaffective disorder, bipolar disorder, and alcohol use disorder – none of which met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18.

Between steps three and four, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> [S]he is limited to no concentrated exposure to humidity and wetness; she is limited to no concentrated exposure to airborne irritants, such as dust, fumes, and gases; she is limited to a moderate noise environment; she is limited to simple, routine, repetitive tasks and simple work related decisions; she is limited to superficial contact with the public, such as passing people in hallways, but no direct contact as part of the actual job requirements; she is limited to tolerating few changes in a routine work setting (defined as having routine tasks in the same environment day-to-day).

Tr. 21. At step four the ALJ found that Plaintiff was unable to perform her past relevant work. Tr. 29. At step five, based on testimony from a vocational expert (VE), the ALJ identified three jobs, requiring Level 2 reasoning, that Plaintiff could perform based on the given hypothetical: production assembler (DOT at 706.687-010, laundry sorter (DOT at 361.687-014), and hand packager-inspector (DOT at 559.687-074). Tr. 30; *see* Tr. 59. Finally, the ALJ found that these jobs existed in significant numbers in the national economy. Tr. 30.

The ALJ issued his decision on January 19, 2018 finding Plaintiff not disabled. Tr. 31. On November 14, 2018, the Appeals Council denied Plaintiff's request for review (Tr. 260), making

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

**REPORT AND RECOMMENDATION** - 2

the ALJ's decision the final decision of the Commissioner of Social Security. Tr. 1.

**DISCUSSION**

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.* However, the Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

**I.     Medical Opinion Evidence**

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where

the evidence is inconclusive, "'questions of credibility and resolution of conflicts are functions solely of the [ALJ]'" and this Court will uphold those conclusions. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). As part of this discretion, the ALJ determines whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant" in deciding how to weigh medical opinions. *Id*. at 603. The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes*, 881 F.2d at 751. The ALJ does not need to discuss all the evidence the parties present but must explain the rejection of "significant probative evidence." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted).

To reject the uncontradicted opinion of either a treating or examining physician, an ALJ must provide clear and convincing reasons. *Revels*, 874 F.3d at 654. When other evidence contradicts the treating or examining physician's opinion, the ALJ must still provide "specific and legitimate reasons" to reject that opinion. *Id*. A non-examining physician's opinion may constitute substantial evidence for an ALJ's findings if that opinion "is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinion of a non-examining physician does not, standing alone, constitute substantial evidence concerning the rejection of the opinion of either an examining physician or a treating physician. *Lester*, 81 F.3d at 831.

**A.    Brett Vallette, Ph.D.**

Dr. Brett Valette performed a consultative examination of Plaintiff as part of her prior claim for benefits, in December 2014. Tr. 431. Based on a psychodiagnostic interview, mental

status exam, and intellectual testing, Dr. Valette concluded, among other things, that Plaintiff could understand, remember and carry out "simple, one or two step instructions" but not detailed or complex instructions. Tr. 434. The ALJ noted that, although Dr. Valette's assessment was made prior to the adjudicative period, "…it is consistent with the overall medical record, which demonstrates that the claimant's mental symptoms improved with medication and that the claimant received conservative treatment." Tr. 27. However, the ALJ gave Dr. Valette's opinion only partial weight because, considering Plaintiff's testimony, the ALJ determined that Plaintiff should also be limited to superficial contact with the public. Tr. 27.

The ALJ did not address or provide any specific and legitimate reason for ignoring Dr. Valette's assessment that Plaintiff was limited to "simple, one or two step instructions." The Commissioner argues that the ALJ's limitation in the RFC to "simple, routine, repetitive tasks and simple work related decisions" accommodates Dr. Valette's limitation to "one or two step instructions." However, a limitation to "one or two step instructions" would limit Plaintiff to jobs requiring a Level 1 reasoning, and the jobs identified by the VE all require Level 2 reasoning (DOT at 706.687-010 (production assembler), 361.687-014 (laundry sorter), 559.687-074 (hand packager-inspector)).[2]

While the ALJ determines whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant" in deciding how to weigh

---

[2] There are six GED Reasoning Levels that range from Level 1 (simplest) to Level 6 (most complex). Id., App. C, § III, 1991 WL 688702. The lowest two levels are Level 1 and 2. Level 1 requires the claimant to apply commonsense understanding to carry out simple one- or two-step instructions and to deal with standardized situations with occasional or no variables in or from these situations encountered on the job. Level 2 requires the claimant to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and to deal with problems involving a few concrete variables in or from standardized situations. *See*, *Rounds v. Commissioner of Social Sec. Admin.*, 807 F.3d 996, 1002-1003 (9th Cir. 2015) (citing 1991 WL 688702).

**REPORT AND RECOMMENDATION** - 5

medical opinions (*Morgan*, 169 F.3d at 603), the ALJ must set out a detailed and thorough summary of the facts and conflicting evidence before making his findings. *Magallanes*, 881 F.2d at 751. Here, the ALJ did not address the apparent conflict between the more restrictive "one to two step instructions" in Dr. Vallette's assessment, with other assessments indicating to the ALJ that Plaintiff was capable of performing jobs requiring Level 2 reasoning. The ALJ's failure to do so is not harmless error because had such limitation been included in the RFC and provided in the hypotheticals to the VE, Plaintiff would have been limited to jobs requiring no more than Level 1 reasoning. *See*, *e.g.*, *Rounds v. Commissioner of Social Sec. Admin.*, 807 F.3d 996, 1002-1003 (9th Cir. 2015) (ALJ is required to reconcile inconsistency between expert testimony that a claimant can perform an occupation involving DOT requirements, when it appears those requirements are more than the claimant can handle.)

Accordingly, the undersigned recommends that this case be remanded for further proceedings to address and resolve this error.

**B.      Peter A. Weiss, Ph.D.**

Dr. Peter A. Weiss performed a consultative examination of Plaintiff for the DSHS in June 2015. Tr. 523. Based on a psychodiagnostic interview and mental status examination, Dr. Weiss indicated that Plaintiff would have a "severe" impairment in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision. Tr. 525. "Severe" means "inability to perform the particular activity in regular competitive employment or outside of a sheltered workshop." Tr. 525; *compare* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.00F(2)(e) (defining "extreme" limitation as "not able to function in this area independently, appropriately, effectively and on a sustained basis"). Dr. Weiss also indicated marked limits in Plaintiff's ability to understand,

remember, and persist in tasks by following detailed instructions; and complete a normal workday and workweek without interruption from psychologically based symptoms. He gave moderate limitations in learning new tasks, adapting to changes in a routine work setting, communicating and performing effectively, maintaining appropriate behavior, and setting realistic goals. Tr. 28 (citing Exhibit 7F/20. Dr. Weiss wrote the claimant would be impaired for 12 months and he recommended outpatient treatment and an assessment of her intellectual functioning with the WAIS-IV. *Id.* Faulder Colby, PhD, who reviewed Dr. Weiss' findings, affirmed the severe, marked, and moderate limitations that Dr. Weiss described. *Id.* (citing Exhibit 7F/2).

The ALJ assigned very little weight to the findings of Dr. Weiss and Dr. Colby as he found them to be "inconsistent with a medical record that showed improvement from medication and counseling, unremarkable mental status exams, and conservative treatment." Tr. 28. The ALJ also concluded that Dr. Weiss and Dr. Colby failed to provide sufficient explanation for the severe and marked limitations they assessed; that their analysis for DSHS is not related to the SS disability process; and, Dr. Weiss "defers to further cognitive testing." *Id.*

### 1. Symptom Improvement

The ALJ cited to no medical records when he concluded that Dr. Weiss' opinion was inconsistent with the medical records. The ALJ cited only to the "longitudinal medical record, which shows symptom improvement from medication and counseling." Tr. 28. However, earlier in his decision, the ALJ similarly stated that the longitudinal file of Plaintiff's mental impairments "demonstrates that the claimant's mental symptoms stabilized with medication and counseling" and there, he noted that prior to the alleged onset date, Plaintiff has a history of borderline intellectual functioning with an IQ score of 70 (2F/3); in early 2015, Plaintiff was

diagnosed with depression and anxiety but her mental status exam during that visit was normal and she was prescribed psychotropic medication to manage he symptoms (4F/2), and in April 2015, it was noted that her mental symptoms were stabilized on Paroxetine and she exhibited normal memory, concentration and mood (6F/6). Tr. 23. In his discussion of Plaintiff's testimony, the ALJ noted that in July 2017, Plaintiff "denied any auditory, visual, or tactile hallucinations and no suicidal, homicidal, or violent ideas, intent, or plan." Tr. 24; *see* Tr. 744.

While this record suggests interim improvement, indications of improvement in mental health must be read in their context. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (improvement does not mean a person's impairments no longer seriously affect the ability to function in the workplace)). "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014) (citing *Holohan*, 246 F.3d at 1205). For example, at her very next visit in September 2017, it is noted that Plaintiff's schizoaffective disorder is "chronic, persistent and fragile;" "there are times when she sees shadows or images at the corner of her eyes;" and "she is becoming more sensitive to lights, becoming easily irritated and agitated." *Id*. As a result of this examination, Plaintiff's aripiprazole (a mood stabilizer) was increased from 5mg to 10mg for use as "a mood stabilizer and for paranoid delusion, auditory hallucination and depression."

Thus, the ALJ erred in failing to read this medication increase and the provider's description of Plaintiff's condition as "chronic, persistent, and fragile," within the context of ongoing symptoms.

### 2. **Unremarkable Mental Status Exams**

The ALJ also concluded that Plaintiff's mental status examinations were unremarkable. Tr. 28. However, Dr. Weiss' mental examination showed issues with memory, fund of knowledge, concentration, and insight and judgment – in other words, Plaintiff was outside the normal limits in four out of eight areas examined. Tr. 526–27. This examination was consistent with that performed by Dr. Patterson in January 2016, which indicated concerns in the areas of memory, fund of knowledge, concentration, and insight and judgment, as well as abstract thinking (Tr. 574), and with that of Dr. Colby, who affirmed the severe, marked, and moderate limitations described by Dr. Weiss. In addition, Plaintiff's treatment notes from 2016 and 2017 contain some "mental status exam" notes (which are far less detailed than the examiners' reports), which indicate feelings of anger (Tr. 736), paranoia (Tr. 736, 738, 740), and hallucinations (Tr. 736, 738, 740), all of which indicate serious ongoing symptoms.

The ALJ provides no explanation for dismissing half of Plaintiff's mental status examination findings. Dr. Weiss, Dr. Patterson, and Dr. Colby all opined that Plaintiff had concerns in the areas of memory, fund of knowledge, concentration, insight and judgment, and abstract thinking, which might, at least in part, explain why these medical providers concluded that Plaintiff was severely impaired in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision.

### 3. **Conservative Treatment**

The ALJ also concluded that Plaintiff's treatment was "conservative." An ALJ may properly note evidence of "conservative treatment" as a reason to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th

**REPORT AND RECOMMENDATION** - 9

Cir.2007). Here, however, Plaintiff was receiving medication and counseling. The ALJ failed to take into account Plaintiff's increased regimen of mood stabilizing medication and her doctor's latest description of her condition as a "chronic, persistent, and fragile schizoaffective disorder."

The ALJ also noted that Dr. Weiss did not provide sufficient explanation for the limitations he assessed and that he "defers to further cognitive testing." Tr. 28. However, Dr. Weiss specifically discussed symptoms of depression and anxiety, and noted poor performance on "a number of sections of the mental status examination." Tr. 524. In addition, Dr. Weiss indicated that Plaintiff's impairments would likely persist for 12 months even with available treatment. Tr. 52.

In sum, the ALJ's error in giving little weight to Dr. Weiss' assessment is harmful because had he credited Dr. Weiss's limitation, the ALJ would have found Plaintiff's mental health disorders disabling at step 3. The "severe" limitation indicated is equivalent to an "extreme" limitation in the area of "concentrate, persist, or maintain pace." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.00E(3); *see id*. Listing 12.00(F)(2)(e) (defining "extreme" limitation), Listing 12.00(F)(3)(f)(iii) (rating for the whole area of paragraph B3 is based on the highest rating of any of its individual parts).

## CONCLUSION

Based on the foregoing, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reevaluate the medical opinions of Dr. Valette and Dr. Weiss. Thereafter, the ALJ should make new findings at step two of the sequential evaluation process; make a new RFC assessment, and new findings at step five of the sequential evaluation process.

Any objection to this Report and Recommendation or the attached proposed order must be filed and served no later than **August 29, 2019**. If no objections are filed, the Clerk shall note the matter for **September 2, 2019** as ready for the Court's consideration. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed **eight** pages. The failure to timely object may affect the right to appeal.

DATED this 8th day of August, 2019.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge